**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WHITEBOX RELATIVE VALUE PARTNERS, LP, WHITEBOX GT FUND, LP, WHITEBOX MULTI-STRATEGY PARTNERS, LP, PANDORA SELECT PARTNERS, LP, <br><br> *Plaintiffs and Counterclaim-Defendants*, <br><br> v. <br><br> TRANSOCEAN LTD., TRANSOCEAN INC., <br><br> *Defendants and Counterclaim- Plaintiffs*. | No. 20-CV-07143 (GBD) |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGEMENT

Dennis F. Dunne
Tyson M. Lomazow
Jed M. Schwartz
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

Andrew M. Leblanc
Brett P. Lowe (admitted *pro hac vice*)
1850 K Street, NW
Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

*Counsel to the Plaintiffs-Counterclaim Defendants*

## <u>TABLE OF CONTENTS</u>

ARGUMENT ....................................................................................................................1

I.    Section 11.03 Applies And Has Been Breached.........................................................2

    A.    The Plain Language of Section 11.03 Makes Clear That It Applies to The
Transaction at Issue Here...............................................................................2

    B.    Defendants Can Point to No Instance of a Court Applying the
"Quantitative" and "Qualitative" Factors Test Where, as Here, a Company
Has Transferred *All* of Its Assets. ...............................................................4

    C.    Defendants' Continued Reliance on *Dynegy* Is Misplaced.......................6

II.   Defendants' Argument That Section 4.04(a)(12) Trumps Section 11.03 And
Justifies Their Actions Is Wrong And Contrary To The Plain Language of the
2027 Indenture. ........................................................................................................8

    A.    There Is No Conflict Between Section 4.04(a)(12) and Section 11.03.
Both Have Meaning Under Plaintiffs' Interpretation of the 2027 Indenture...........8

    B.    If There Were a Conflict Between Sections 4.04(a)(12) and 11.03, Section
11.03 Would Govern.......................................................................................9

III.  A Judgment In Defendants' Favor Cannot Bind Absent Holders...................10

    CONCLUSION........................................................................................................11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bank of N.Y. v. Tyco Int'l Grp.*,
    545 F. Supp. 2d 312 (S.D.N.Y. 2008) ...................................................................................10

*HFTP Invs. L.L.C. v. Grupo TMM, S.A.*,
    2004 WL 5641710 (S.D.N.Y. June 4, 2004) ..........................................................................10

*Hollinger Inc. v. Hollinger Int'l, Inc.*,
    858 A.2d 342 (Del. Ch. 2004) .................................................................................................5

*Khandhar v. Elfenbein*,
    943 F.2d 244 (2d Cir. 1991) ..................................................................................................10

*Oaktree Capital Mgmt. v. Spectrasite Holdings, Inc.*,
    2002 WL 32173072 (D. Del. Jun. 25, 2002) ...........................................................................6

*In re Ore Cargo, Inc.*,
    544 F.2d 80 (2d Cir. 1976) ......................................................................................................3

*Roseton OL, LLC v. Dynegy Holdings Inc.*,
    2011 WL 3275965 (Del. Ch. July 29, 2011) ...............................................................6, 7, 10

*Sharon Steel Corp. v. Chase Manhattan Bank*,
    691 F.2d 1039 (2d Cir. 1982) ................................................................................................10

*Sterling Inv. Servs., Inc. v. 1155 Nobo Assocs., LLC*,
    30 A.D.3d 579 (2d Dep't 2006) ..............................................................................................7

# ARGUMENT

Section 11.03 of the 2027 Indenture is clear and unambiguous.[1]  It states that in the case of a "sale, . . . conveyance, transfer or disposal of all or substantially all of the assets of" an Upper Tier Notes Guarantor to any "Person," the guarantee of the 2027 Notes "must be expressly assumed by such other Person."  It is undisputed that the only assets the Upper Tier Notes Guarantors held (both when the 2027 Indenture was drafted and at the time of the transaction at issue here) was the stock of the subsidiaries held by each of the Upper Tier Notes Guarantors.  And it is undisputed that in the transaction the Upper Tier Notes Guarantors transferred all of that stock, which constituted all of their assets, to the Lower Tier Notes Guarantors—each of which is a "Person."

It is also undisputed that none of the Lower Tier Notes Guarantors provided the guarantee required by Section 11.03.  That failure to provide a guarantee was a breach of the 2027 Indenture. And as explained in Plaintiffs' Opening Brief, that breach has significantly harmed the holders of the 2027 Notes, because there are now hundreds of millions of dollars of notes that are structurally senior to the 2027 Notes, when they should not be.

Faced with these plain facts and the 2027 Indenture's clear language, Defendants try to complicate things that are simple.  But as explained below, none of Defendants' arguments have a basis in the actual words of the 2027 Indenture.  Each of their arguments requires the Court to ignore what the 2027 Indenture says, add words to it that are not there, or ignore entirely other portions of the indenture—none of which this Court can or should do when interpreting this agreement.  Rather, the Court should apply the undisputed facts to the plain language of the 2027 Indenture and grant summary judgment in Plaintiffs' favor.[2]

---

[1] Capitalized terms have the meaning in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and In Support Of Plaintiffs' Cross-Motion for Summary Judgment ("Pl. Opening Br.").

[2] Defendants have filed a Reply Local Rule 56.1 Statement (ECF No. 44), which the Court should ignore because (i) Local Civil Rule 56.1 does not provide for such a reply, and (ii) it improperly contains additional legal argument.

I.      **SECTION 11.03 APPLIES AND HAS BEEN BREACHED.**

A.      **The Plain Language of Section 11.03 Makes Clear That It Applies to The Transaction at Issue Here.**

As explained in Plaintiffs' Opening Brief, Section 11.03 is a specifically-negotiated provision, not present in most of Defendants' other debt issuances, that protects Plaintiffs from exactly the type of conduct Defendants have engaged in here.  The plain language of Section 11.03 requires that if the Upper Tier Notes Guarantors (referred to as "Subsidiary Guarantors") transfer "all or substantially all" of their assets to affiliates such as the Lower Tier Notes Guarantors, then such affiliates must provide a guarantee of the 2027 Notes.  *See* Pl. Opening Br. at 4-7, 10-11.  It is undisputed that the only assets held by the Upper Tier Notes Guarantors were the stock of their respective subsidiaries. *Id.* at 7-8. And it is likewise undisputed that Upper Tier Notes Guarantors transferred all of that stock, i.e., all of their assets, to the Lower Tier Notes Guarantors, and that the Lower Tier Notes Guarantors did not provide a guarantee of the 2027 Notes.  *Id.*

In an attempt to avoid the straightforward conclusion that Defendants breached Section 11.03 of the 2027 Indenture, Defendants previously argued that this section does not apply to an "internal reorganization," which is how they characterize what they have done here.  *See* Defendants' Memo of Law (ECF No. 25) at 19-22.  But as shown in the Opening Brief, that position would render Section 11.03 meaningless because Section 11.03 only applies when there is an "internal" transfer of assets.  *See* Pl. Opening Br. at 5-6, 11-12.  When there is an "external" transfer of all or substantially all assets, i.e., a transfer to an entity that is not an Affiliate of Transocean Inc. ("TINC"), Section 11.06 applies and the guarantees are released.  *See id*.

In response, Defendants now concede that "Section 11.03 applies to affiliate transactions[.]" Resp. Br. at 14.  But they now argue that Section 11.03 only applies to "an affiliate transaction where there is an upward or lateral transfer of assets." *Id.* at 15.  But there are no words

in the 2027 Indenture to support a limitation to upward or lateral transfers. Defendants' new position is directly contradicted by the plain language of Section 11.03, which expressly applies to transfers "to ***any Person*** . . . if such other Person is ***not*** the Parent, the Issuer or another Subsidiary Guarantor." Section 11.03 draws no distinction between a "Person" that is an "upward or lateral" affiliate of the Subsidiary Guarantors on the one hand, and a "downward" affiliate on the other hand. Defendants' "upward or lateral" limitation is pulled from thin air. It ignores that Section 11.03 applies to "any Person," which includes the Lower Tier Notes Guarantors.

If Defendants did not want Section 11.03 to apply to transfers of all assets to subsidiaries of the Subsidiary Guarantors, the 2027 Indenture could have said so. Indeed, Section 11.03 specifies that transfers to certain entities will not trigger the guarantee obligation (e.g., TINC or the other Subsidiary Guarantors), but contains no such exclusion for subsidiaries of the Subsidiary Guarantors such as the Lower Tier Notes Guarantors.[3]

In another new attempt to avoid the plain language of Section 11.03, Defendants' Response Brief asserts, for the first time, that Section 11.03 only applies to the transfer of all or substantially all of an Upper Tier Notes Guarantor's assets to "any one 'Person,'" and because each of the Upper Tier Notes Guarantors transferred the entirety of their assets to three "Persons," Section 11.03 is not implicated. *See* Resp. Br. at 16. But Defendants fail to acknowledge that the 2027 Indenture itself explicitly states that "***words in the singular include the plural***." 2027 Indenture, Section 1.03(5), attached as Ex. D to the Apps. Decl. (ECF No. 10-4) (emphasis added). That means that when the indenture uses the word "Person" it means "Persons" as well. Accordingly, the fact that Defendants violated Section 11.03 by transferring all of their assets to three "Persons" rather than one is irrelevant.

---

[3] *See, e.g.*, *In re Ore Cargo, Inc.*, 544 F.2d 80, 82 (2d Cir. 1976) (where sophisticated parties omit a term from an agreement, the court should not imply it).

In yet another attempt at obfuscation, Defendants assert that even though the Upper Tier Notes Guarantors transferred all of their assets to the Lower Tier Notes Guarantors, Section 11.03 is not triggered because the "Upper Tier Notes Guarantors have not transferred any value whatsoever." Resp. Br. at 9-10. But this Court need not engage in an inquiry as to whether "value" has been transferred because "value" is not a word used in Section 11.03; the issue under the express terms of Section 11.03 is whether the Upper Tier Notes Guarantors transferred all of their *assets*. And it is undisputed that the Upper Tier Notes Guarantors have transferred all of their assets—the equity they owned in various asset holding companies—which are the only assets they owned at the time the 2027 Notes were issued. *See* Pl. Opening Br. at 7-8; *see also* SUMF Response ¶¶ 24-28.[4] Again, Section 11.03 could have used the word "value" instead of the word "assets," but it did not. Indeed, elsewhere in the 2027 Indenture, in Section 4.06, the indenture addresses the "value" that the Upper Tier Notes Guarantors must "own, directly or indirectly." In contrast, Section 11.03 explicitly relates to "assets," and does not allow for such "assets" to be owned by the Upper Tier Notes Guarantors "indirectly" unless a replacement guarantee is provided. 2027 Indenture, Section 4.06, attached as Ex. D to the Apps. Decl. (ECF No. 10-4).

**B.     Defendants Can Point to No Instance of a Court Applying the "Quantitative" and "Qualitative" Factors Test Where, as Here, a Company Has Transferred _All_ of Its Assets.**

As stated above, the undisputed facts show that the Upper Tier Notes Guarantors transferred _**all**_ of their assets. Defendants repeatedly ask this Court to ignore this fact, and the consequences that flow from it, and instead apply a "quantitative" and "qualitative" factors test to determine whether "all or substantially all" of the Upper Tier Notes Guarantors' assets have been

---

[4] Defendants' assertions that the Upper Tier Notes Guarantors continue to own "***substantially the same***" assets as before, and that none of their "assets have been transferred ***for purposes of the successor obligor provision***," Resp. Br. at 10, 14 (emphasis added) underscore that a transfer of all of their assets has, in fact, actually occurred.

transferred.  *See* Resp. Br. at 9-14.  But as explained in Plaintiffs' Opening Brief, Defendants'
position makes no sense.  Courts rely on that test when less than all of an entity's assets have been
transferred to determine whether the assets transferred constitute "substantially all" of the entity's
assets.  There is no need to apply a test here to determine whether the Upper Tier Notes Guarantors
transferred all of their assets when it is ***undisputed that the Upper Tier Notes Guarantors
transferred <u>all</u> of their assets***.  *See* Pl. Opening Br. at 13-14.

Plaintiffs' Opening Brief emphasized that Defendants had not cited a single case where a
court applied the "quantitative" and "qualitative" factors test where, like here, a company had
transferred ***all*** of its assets.  *Id.* at 14.  Defendants concede the novelty of their argument and the
lack of any case supporting their position that involved the transfer of all of an entity's assets.  *See
generally* Resp. Br. at 9-14.  In an effort to convince this Court to adopt this approach, Defendants
cite to *Hollinger Inc. v. Hollinger Int'l, Inc.*, 858 A.2d 342, 376-79 (Del. Ch. 2004).  *See* Resp. Br.
at 12-13.  First, *Hollinger* also involved a situation in which less than all of the assets of a company
were transferred.  But *Hollinger* supports Plaintiffs' argument that the Court need not apply the
"qualitative" and "quantitative" factors test when all of the assets have been transferred.  Indeed,
the very quotation that Defendants rely on makes clear that the test Defendants urge was adopted
to prevent parties from evading their obligations "by retaining a small amount of property not vital
to the operations of the business," and claiming therefore that not "all" of their assets had been
transferred.  *Hollinger*, 858 A. 2d at 376.  Courts apply this test when a party transfers ***less than
all*** of its assets in order to determine whether that party should nevertheless be treated ***as if it had
transferred all*** of its assets.  It would turn this test on its head if it were used—for the first time—
to hold that an entity that has in fact transferred all of its assets should nonetheless be deemed not

to have done so.  Defendants' position makes no sense.[5]

### C.    Defendants' Continued Reliance on *Dynegy* Is Misplaced.

Defendants continue to rely erroneously on *Roseton OL, LLC v. Dynegy Holdings Inc.*, 2011 WL 3275965 (Del. Ch. July 29, 2011), which is a non-binding, out-of-jurisdiction case that involved agreements with entirely different language and a transaction with entirely different facts. *See* Resp. Br. at 13.  As pointed out in Plaintiffs' Opening Brief, *Dynegy* is yet another case where less than all of a company's assets were sold or transferred, and the court in *Dynegy* emphasized that it is only "[i]n determining whether a company has sold 'substantially all' of its assets" that "New York courts, like Delaware courts, look to both qualitative and quantitative factors."  2011 WL 3275965, at *13.

Moreover, the facts of *Dynegy*—including the successor obligor clause at issue—are entirely distinguishable from this case.  In *Dynegy*, the plaintiffs held certain guaranties issued by Dynegy Holding Inc. ("DHI").  *Id.* at *1-2.  The relevant portion of those guaranties provided that **DHI** "shall not . . . *transfer . . . its properties and assets substantially as an entirety to any Person* in one or a series of transactions unless . . such . . . succeeding Person shall expressly assume all of the Guarantor's obligations under this Guaranty[.]"  *Id.* at *10 (emphasis in original).  Pointing to this provision in the guaranties, plaintiffs sought to enjoin a transaction whereby **subsidiaries of DHI (and not DHI itself) would transfer substantially all of their assets** to newly created entities, which were also subsidiaries of DHI.  *Id.* at *4.  The Delaware Court of Chancery held that because the transfer at issue was not a transfer of **DHI's assets**, under a plain reading of those

---

[5] Defendants also ignore authority cited in Plaintiffs' Opening Brief confirming that where, as here, there is no dispute that all of the assets were transferred, the "quantitative" and "quantitative" factors test does not apply.  Specifically, in *Oaktree Capital Mgmt. v. Spectrasite Holdings, Inc.*, 2002 WL 32173072 (D. Del. Jun. 25, 2002), the court rejected an argument that the transfer of a company's only asset to a wholly-owned subsidiary was not a transfer for purposes of a successor obligor provision.  *Id.* at *3.  In ruling, the court held that it "cannot conclude that the substance of the transaction, as opposed to the form of the transaction, did not have the economic effect of a transfer."  *Id.*

guaranties, there was no breach.  *Id.* at \*10 ("DHI contends that the plain meaning of the phrase 'its properties and assets' is assets that DHI directly owns.  I agree with DHI.").  So in *Dynegy*, the entities transferring their assets were not subject to the covenant in the guaranties, and the one that was subject to the covenant did not transfer its assets.  Here, by contrast, it is undisputed that the Upper Tier Notes Guarantors are both the entities that transferred their assets and are subject to Section 11.03.  Thus, *Dynegy* is inapposite.

Separately, in dicta, the *Dynegy* court opined that even if the transfers at issue were transfers of DHI's assets, they would not be a transfer of substantially all of DHI's assets when viewed on a consolidated basis (i.e., when DHI and its subsidiaries were effectively considered as one entity).  *Id.* at \*12-13.  But the same analysis cannot apply here because Section 11.03 does not provide for the Upper Tier Notes Guarantors to be treated on a consolidated basis with their subsidiaries and those words cannot be implied into the 2027 Indenture for Defendants' purposes.

When the phrase "all or substantially all" was intended to apply on a consolidated basis, the 2027 Indenture so specifies, in two other places—Section 5.01 and the definition of "Change of Control."  2027 Indenture, Sections 1.01 and 5.01, Ex. D to the Apps. Decl.[6]  But in the case of Section 11.03, the 2027 Indenture does not provide for treating "all or substantially all" assets on a consolidated basis, making clear that it was not intended to apply on a consolidated basis.[7]  This is another reason why this case is different from *Dynegy*.[8]

---

[6] Section 5.01 explicitly states that "the term 'all or substantially all of its assets', with respect to [TINC], shall be computed on a consolidated basis."  *Id.* § 5.01.  The definition of "Change of Control" is defined to include "the sale, lease, transfer, conveyance or other disposition . . . of all or substantially all of the assets of the Company and its Subsidiaries taken as a whole."  *Id.* § 1.01.

[7] *See, e.g., Sterling Inv. Servs., Inc. v. 1155 Nobo Assocs., LLC*, 30 A.D.3d 579, 581 (2d Dep't 2006) ("Under accepted canons of contract construction, when certain language is omitted from a provision but placed in other provisions, it must be assumed that the omission was intentional.").

[8] *Dynegy* might have been applicable to a claim under Section 5.01 of the 2027 Indenture.  But that is not the provision Defendants are alleged to have breached.

II.     **DEFENDANTS' ARGUMENT THAT SECTION 4.04(A)(12) TRUMPS SECTION 11.03 AND JUSTIFIES THEIR ACTIONS IS WRONG AND CONTRARY TO THE PLAIN LANGUAGE OF THE 2027 INDENTURE.**

A.      **There Is No Conflict Between Section 4.04(a)(12) and Section 11.03.  Both Have Meaning Under Plaintiffs' Interpretation of the 2027 Indenture.**

In Plaintiffs' Opening Brief, Plaintiffs explained that their interpretation of the 2027 Indenture—and not Defendants' interpretation—is the only one that gives meaning to the entirety of the agreement.  *See* Pl. Opening Br. at 15-17.  As an example, Plaintiffs noted that both Section 4.04(a)(12), which allows for TINC's subsidiaries to incur certain amounts of debt, and Section 11.03, which requires a guarantee when the Upper Tier Notes Guarantors transfer all of their assets to a new entity, both would have been satisfied if TINC had entered into the same transaction at issue here ***and*** caused the Lower Tier Notes Guarantors to provide a guarantee of the 2027 Notes. *Id.*  In that case, TINC would not have permitted its Subsidiaries to incur more than $2.4 billion in "Indebtedness," so Section 4.04(a)(12) would have been satisfied, and Section 11.03 would have been satisfied once the Lower Tier Notes Guarantors provided the required guarantee.  *Id.*

In response, Defendants argue that Plaintiffs' reading of the 2027 Indenture—and the example provided above—cannot be correct, because in that situation, the new debt issued by TINC would have been *pari passu* with, as opposed to structurally senior to, the 2027 Notes.[9]  *See* Resp. Br. at 7.  According to Defendants, this would render "the key senior debt basket provision of Section 4.04[(a)(12)] superfluous."  *Id.* at 6.

But Defendants' argument is based on the false premise that Section 4.04(a)(12) ***only allows*** for the incurrence of indebtedness that is senior to the 2027 Notes.  *See id.*  That is not the case.  Section 4.04(a)(12) allows for the incurrence of indebtedness by TINC's Subsidiaries of up

---

[9] The new debt would have been *pari passu* with the 2027 Notes in that instance because both would have been guaranteed by the Lower Tier Notes Guarantors.

to $2.4 billion, ***but it says nothing about whether that indebtedness can be senior to, junior to, or pari passu with the 2027 Notes***.  Defendants' interpretation adds words to Section 4.04(a)(12) that simply are not there.[10]

Even if Defendants were correct that Section 4.04(a)(12) provided an explicit right to issue "senior" debt, their argument would still fail because there are ways that TINC could have issued debt that were structurally senior to the 2027 Notes that complied with both Sections 4.04(a)(12) and 11.03.  For example, TINC could have drawn on its existing $1.3 billion existing revolving credit facility, which is structurally senior to the 2027 Notes, or increased that facility if those lenders agreed to do so.[11]

### B.    If There Were a Conflict Between Sections 4.04(a)(12) and 11.03, Section 11.03 Would Govern.

Plaintiffs' interpretation of the 2027 Indenture gives meaning to every provision, leaving no conflict between Sections 11.03 and 4.04(a)(12).  But if such a conflict did exist, Section 11.03 would govern because it is the more specific of the two provisions.  *See* Pl. Opening Br. at 15-17.  Indeed, whereas Section 4.04(a)(12) is simply a general provision limiting the ability of TINC's Subsidiaries to incur additional indebtedness up to a maximum amount, Section 11.03 expressly prohibits an Upper Tier Notes Guarantor from transferring all of its assets to one or multiple affiliates (other than TINC, Transocean Parent, or other Upper Tier Notes Guarantors) without

---

[10] Defendants seemingly argue that Section 4.04(a)(12) must be a "senior" debt basket provision because Section 4.04(a)(11), according to Defendants, provides a "separate right to issue *pari passu* debt."  Resp. Br. at 7.  But these sections do different things.  Section 4.04(a)(12) limits the total amount of debt that all of TINC's subsidiaries can incur under a credit facility, while Section 4.04(a)(11) limits the amount of debt that any individual "Subsidiary Guarantor" can incur.  Nothing about Section 4.04(a)(11) mandates that debt issued in accordance with Section 4.04(a)(12) must be "senior" to the 2027 Notes, and as discussed above, nothing in Section 4.04(a)(12) addresses whether the debt that can be incurred under that provision is senior to, junior to, or *pari passu* with the 2027 Notes.

[11] *See* Vayda Decl. at ¶ 7 (ECF No. 27); *see also* Revolving Credit Facility Agreement, attached as Ex. 1 to the Vayda Decl. (ECF No. 27-1).  Notably, TINC has engaged in this exact type of increase in its existing revolving credit facility in the past.  For example, during the year 2019, TINC increased the aggregate commitments under its revolving credit facility from $1 billion to $1.3 billion.  *See, e.g.*, Transocean's Ltd.'s Annual Report (Form 10-K) (February 18, 2020) at 27, 33, 62, attached as Ex. L to the Apps Decl. (ECF No. 10-12).

such affiliates providing a guarantee of the 2027 Notes.  *See id.* at 10-11, 15-17.

Defendants suggestion that Section 11.03 is a "boilerplate" successor obligor provision that is "contained in nearly every indenture," Resp. Br. at 7-9, is demonstrably false.  As Defendants concede, ***it is not even contained in many of Defendants' own indentures***.  Indeed, Defendants do not address (or even mention) the fact that the guarantee requirement of Section 11.03 was inserted into the 2027 Indenture following a number of prior debt issuances by TINC—including the issuance of the 2026 Notes—that did ***not*** include this protection.  *See generally* Pl. Opening Br. at 4-6.  This protection cannot be "boilerplate" and "contained in nearly every indenture" when it is only contained in a minority of TINC's own indentures.[12]

## III.    A JUDGMENT IN DEFENDANTS' FAVOR CANNOT BIND ABSENT HOLDERS.

Defendants' assertion on pages 18 and 19 of their Response Brief that success on their declaratory judgment claims would have preclusive effect on the absent holders of the 2027 Notes is simply wrong.  Collateral estoppel requires that the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination.  *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991).  In every case Defendants cite, and unlike here, the party that was collaterally estopped participated in the prior litigation, or the court declined to even reach the issue of collateral estoppel.

---

[12] To the extent that there is a "boilerplate" successor obligor provision in the 2027 Indenture, it is Section 5.01, which is in the indentures governing both the 2026 Notes and the 2027 Notes.  *See id*. at 6-7.  Defendants have not cited to any case that involved a guarantee requirement like the one contained in Section 11.03, which, as Defendants acknowledge, applies exclusively to transfers from subsidiary guarantors to affiliates.  Rather, each of the cases cited by Defendants involved successor obligor provisions like Section 5.01.  *See Sharon Steel Corp. v. Chase Manhattan Bank*, 691 F.2d 1039, 1050-51 (2d Cir. 1982) (interpreting successor obligor provision generally applying to transfers of all or substantially all assets to other entities, including non-affiliates); *HFTP Invs. L.L.C. v. Grupo TMM, S.A.*, 2004 WL 5641710, at *15 (S.D.N.Y. June 4, 2004) (same); *Bank of N.Y. v. Tyco Int'l Grp.*, 545 F. Supp. 2d 312, 319 (S.D.N.Y. 2008) (same); *Dynegy*, 2011 WL 3275965, at *11-12 (same).

## CONCLUSION

Plaintiffs' cross-motion for summary judgment should be granted.[13]


Dated:   October 22, 2020               MILBANK LLP
         New York, New York

                             By:   */s/ Jed M. Schwartz*
                                Dennis F. Dunne
                                Tyson M. Lomazow
                                Jed M. Schwartz
                                55 Hudson Yards
                                New York, NY 10001
                                Telephone: (212) 530-5000
                                Facsimile: (212) 530-5219

                                Andrew M. Leblanc
                                Brett P. Lowe (admitted *pro hac vice*)
                                1850 K Street, NW
                                Suite 1100
                                Washington, DC 20006
                                Telephone: (202) 835-7500
                                Facsimile: (202) 263-7586

                                *Counsel to the Plaintiffs-Counterclaim*
                                *Defendants*

---

[13] Finally, although it does not merit a response, in footnote 4 of their Response Brief, Defendants accuse Plaintiffs and their counsel of generating a press article analyzing the parties' contentions in this case and agreeing with Plaintiffs' position.  For the avoidance of doubt, neither Plaintiffs nor their counsel had anything to do with that article.