WHITE & CASE

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
T +1 212 819 8200

whitecase.com

November 4, 2020

VIA ECF

The Honorable George B. Daniels
United States District Court
for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   Whitebox Relative Value Partners, LP, et al. v. Transocean Ltd., et al (No. 20-cv-07143) (GBD) – **Response to Whitebox's Letter dated November 2, 2020 [Dkt. 53]**

Dear Judge Daniels:

We represent Defendants and Counterclaim-Plaintiffs Transocean Ltd. and Transocean Inc. (together, "Transocean" or the "Company") in the above-captioned action, and write in response to the unauthorized sur-reply letter (the "Sur-Reply") submitted on November 2 by Plaintiffs and Counterclaim-Defendants Whitebox Relative Value Partners, LP, Whitebox GT Fund, LP, Whitebox Multi-Strategy Partners, LP, and Pandora Select Partners, LP and Whitebox Advisors LLC (collectively, "Counterclaim-Defendants" or "Whitebox") [Dkt. 53]. As set forth below, the Sur-Reply is procedurally improper and substantively without merit.

1. **The Unauthorized Sur-Reply Is Improper**

The Court did not invite further briefing, and Whitebox did not request permission from the Court before filing its Sur-Reply in violation of this Court's Individual Rules and Practices. *See* Local Rules and Practices of Judge George B. Daniels, Section IV.B ("Sur-reply memoranda will not be accepted without prior permission of this Court."). Transocean respectfully requests that the Court disregard and strike the Sur-Reply. *See, e.g.*, *Direxion Shares, ETF Trust v. Leveraged Innovations L.L.C.*, 2014 U.S. Dist. LEXIS 161469, at *4 n.2 (S.D.N.Y. Nov. 18, 2014) (disregarding supplemental submission addressing questions that arose during oral argument because the supplement was submitted "without permission and after all briefing had been submitted and oral argument on the motion had occurred."); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 164 n.5 (S.D.N.Y. 2015) (in an indenture dispute, disregarding "unsolicited letter seeking to supplement [] merits arguments" submitted after argument because it "improperly raises new arguments after the close of briefing and argument, without having sought or obtained permission for such a submission"); *Lazare Kaplan Int'l, Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 288 (S.D.N.Y. 2018) (noting the "Court's policy not to accept supplemental submissions with respect to pending motions, filed without permission").

WHITE & CASE

The Honorable George B. Daniels
November 4, 2020

### 2. **Whitebox Continues To Ignore Controlling Law**

Alternatively, Transocean respectfully requests permission to submit the following response to Whitebox's unauthorized Sur-Reply.

There is no dispute about the controlling test that has been applied for over 40 years for determining whether a transaction is a transfer of all or substantially all the assets of a company. Whitebox has never disputed (i) the decades of controlling case law, or (ii) the fact that the transaction here at issue does not constitute a sale of "all or substantially all" the assets under the controlling test. Instead, Whitebox has argued that this Court should reject 40 years of jurisprudence, including from the Second Circuit, without citing a single case or other authority to support its position. Whitebox's Sur-Reply again does not cite a single case or other authority supporting its request, calling into question the established controlling law, or even addressing the question presented here of whether the transaction has been a sale of "all or substantially all" of the Upper Tier Notes Guarantors' assets.

Lacking any authority supporting its position to ignore the controlling test for determining whether a transaction is a transfer of "all or substantially all" of a company's assets, Whitebox now shifts the focus of its argument away from the word "*all*" in the test and toward the word "*assets*." Whitebox's latest effort to avoid the controlling law is meritless.

*First*, the cases that Whitebox cites are completely inapposite. None of them address the interpretation of an indenture, a successor obligor provision, or whether a transfer constitutes "all or substantially all" of a company's assets. In short, Whitebox ignores 40 years of governing law in favor of cases that do not consider the issue before this Court. Even then, Whitebox generally cites to uncontested factual recitations about the parties in a case, where there was no holding, no discussion by the parties or the court, and no dispute relating to the definition of assets. *See, e.g.*, *Aerotech, Inc. v. TCW Capital,* 1994 U.S. Dist. LEXIS 5086 *2 (S.D.N.Y. Apr. 20, 1994) (noting that " Hobby Products, Inc. ('Hobby'), originally an additional defendant, is a holding company whose sole asset is 100% of the stock of Centuri.").[1] Thus, the recitations cited by Whitebox are authority for nothing. *See, e.g., Central Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363 (2006) (holding that courts are "not bound to follow our dicta in a prior case in which the point now at issue was not fully debated"); *Wong v. Doar*, 571 F.3d 247, 257 (2d Cir. 2009) (finding that "the context of the quoted statement indicates that the court was simply stating the plaintiff's position, not ruling as to the proper interpretation of the statute," which "provides no support for [plaintiff's] argument that it constitutes a holding by this court.").

---

[1] *See also At Home Corp. v. Cox Communs.*, Inc., 446 F.3d 403, 410 (2d Cir. 2006) (hypothesizing that "a different analysis may control if an indirect sale or purchase is nothing but a tactic to evade section 16(b), as, for example, if an insider acquires a holding company that has no appreciable assets other than shares of the issuer, or that holds a certain proportion of its assets in the stock of the issuer."); *SEC v. Chenery Corp.*, 318 U.S. 80, 85 (1943) (listing out the relevant holding company's assets, but not defining in any way what constitutes an "asset"); *Faleck & Margolies v. Patrusky, Mintz & Semel*, 1990 U.S. Dist. LEXIS 14624, at *1 (S.D.N.Y. Oct. 28, 1990) (referring in background to the possessions of a debtor in the context of a shareholder derivative suit, but not defining in any way what constitutes an "asset").

The Honorable George B. Daniels
November 4, 2020

**WHITE & CASE**

The other cases cited by Whitebox address Bankruptcy Code issues relating to preferences, absolute priority, and substantive consolidation concerning non-debtor subsidiaries, issues that also have nothing to do with this case. *See, e.g., In re Beck Industries, Inc.,* 479 F.2d 410, 411 (2d Cir. 1973) ("Even though the value of the subsidiary's outstanding shares owned by the debtor may be directly affected by the subsidiary's dispute with third parties, Congress did not give the bankruptcy court exclusive jurisdiction over all controversies that in a way affect the debtor's estate."); *In re Regency Holdings (Cayman), Inc.*, 216 B.R. 371, 375 (Bankr. S.D.N.Y. 1998) ("A party seeking to overcome the presumption of separateness must pierce the corporate veil, or prove the two entities should be substantively consolidated."); *In re Stillwater Asset Backed Offshore Fund Lt*d., 559 B.R. 563, 594 (Bankr. S.D.N.Y. 2016) (rejecting argument "that the existence of wholly-owned limited liability companies should automatically be ignored and that their property should always be deemed to properties belonging to their parent entities.").

This is not a case about evading liability, and the Second Circuit and other courts do not look to principles of limited liability and corporate separateness in determining whether a transaction constitutes a transfer of "all or substantially all" of the assets of a company. The purpose of a successor obligor provision is to protect against a "liquidation," *Resnick v. Karmax Camp Corp.*, 149 A.D.2d 709, 710 (2d Dep't 1989), and to "insure that the principal operating assets of a borrower are available for satisfaction of the debt." *Sharon Steel Corp. v. Chase Manhattan Bank, N.A.*, 691 F.2d 1039, 1051 (2d Cir. 1982). Thus, courts evaluate quantitative and qualitative factors to assess the "*economic value*"[2] and the "*economic substance*"[3] of a transaction, and whether the company retained "*economic vitality*"[4] after the transaction. Transfers of all or substantially all the assets of a company strike "at the heart of the corporate existence and purpose,"[5] change "the nature or character of the entity's business,"[6] represent a "radical departure" from the successful business,[7] constitute "a watershed event that fundamentally alter[s] [the company's] business,"[8] and/or result in a "liquidation."[9] Successor obligor clauses do not apply to internal reorganizations, like the transaction here at issue. *Bank of N.Y. v. Tyco Int'l Group*, S.A., 545 F. Supp. 2d 312, 321 (S.D.N.Y. 2008); *Dynegy Holdings*, 2011 Del. Ch. LEXIS 113, at *52-53.

There is no dispute here that there was an internal reorganization, and that the Company's principal operating assets—indeed all of the operating assets and the only assets with value—were 100% owned indirectly by the Upper Tier Notes Guarantors before the internal reorganization, and continue to be 100% owned indirectly by the Upper Tier Notes Guarantors after the reorganization.

---

[2] *Roseton OL, LLC v. Dynegy Holdings, Inc.*, 2011 Del. Ch. LEXIS 113, at *53 (Del. Ch. July 29, 2011) (emphasis added).

[3] *Oaktree Capital Mgmt., LLC v. SpectraSite Holdings, Inc.*, 2002 U.S. Dist. LEXIS 12761, at *10 (D. Del. Jun. 25, 2002) (emphasis added).

[4] *Hollinger Inc. v. Hollinger Int'l, Inc.*, 858 A.2d 342, 379 (Del. Ch. July 29, 2004) (emphasis added).

[5] *Gimbel v. Signal Cos., Inc.*, 316 A.2d 599, 606 (Del. Ch. 1974).

[6] *HFTP Inv., L.L.C v. Grupo TMM, S.A.*, 2004 N.Y. Misc. LEXIS 3248, at *11 (Sup. Ct. N.Y. Cnty. June 4, 2004).

[7] *Katz v. Bregman*, 431 A.2d 1274, 1276 (Del. Ch. 1981).

[8] *Edbar Corp. v. Sementilli*, 784 N.Y.S.2d 920, 920 (Sup. Ct. Bronx Cnty. 2004).

[9] *Resnick v. Karmax Camp Corp.*, 149 A.D.2d 709, 710 (2d Dep't 1989).

WHITE & CASE

The Honorable George B. Daniels
November 4, 2020

Thus, there has been no change at all to the Upper Tier Notes Guarantors' "corporate purpose or existence" and "economic vitality," or their ability to repay debt. To the contrary, there has been no transfer because the exact same operating assets remain available to satisfy the Upper Tier Notes Guarantors' debt.[10]

*Second*, Whitebox's focus on direct ownership of a holding company is misplaced and irrelevant. At issue is the Upper Tier Notes Guarantors' indirect ownership of assets. There is no dispute that the Upper Tier Notes Guarantors are mere holding companies that do not generate any revenues to satisfy debt obligations. The *only* assets that generate revenue to satisfy debt obligations are the operating entities. The Upper Tier Notes Guarantors *never* directly owned the operating entities, and their *indirect* ownership of the operating entities, the only assets with value, has not changed by reason of the internal reorganization or otherwise. Before the internal reorganization, the Upper Tier Notes Guarantors serviced the debt through the revenues generated from the operating entities they indirectly owned, and after the internal reorganization they continue to service debt through the revenues generated from the same operating entities that they still 100% own indirectly. Thus, the internal reorganization did not transfer all of the Upper Tier Notes Guarantors' assets, or even any of them.

*Third*, Whitebox's rehashed argument that the "plain reading" of Section 11.03 supports its position is frivolous. Whitebox continues to ignore that its "plain reading" argument has already been rejected generally by every court addressing the issue, and specifically by the Second Circuit as an incorrect "masterpiece of simplicity" and a "literalist approach [that] proves too much." *Sharon Steele*, 691 F.2d at 1059. The plain reading of the successor obligor clause here at issue is exactly how the provision has been read by every other court, as addressed above.

*Fourth*, Whitebox is correct that it would be "unfair" to apply an interpretation of a contract provision "differently than the way...the Second Circuit ha[s] read the same terms in similar context." The Second Circuit and every single case that has addressed the issue has interpreted the provision exactly as submitted by Transocean. Whitebox cannot cite to a single case to support its incorrect interpretation, as Whitebox admitted in response to a question from this Court during the October 28 hearing. *See* Oct. 28, 2020 Hr'g Tr. [Dkt. 54] at 48:22-23. Transocean agrees that it would be unfair to reject 40 years of uniform jurisprudence in favor of Whitebox's unsupported, incorrect, and already rejected position, especially where the Second Circuit has explicitly instructed that successor obligor clauses must be uniformly interpreted because they are commonly used, they are reviewed by governmental bodies, and failing to follow the uniform interpretations "would create uncertainties that would greatly impair the efficient working of capital markets." *Sharon Steele*, 691 F.2d at 1048.

---

[10] The only impact to Whitebox is to a claim of priority, but the successor obligor clause has nothing to do with claim priority. Claim priority is addressed through the baskets set forth in Section 4.04(a)(12), and Whitebox concedes that Section 4.04(a)(12) has not been breached. *See* Oct. 28, 2020 Hr'g Tr. [Dkt. 54] at 35:13-16 ("Let me be crystal clear about this. We do not contest that Transocean violated the indenture by raising some assets under Section 4.04(a)(12). We do not believe there was a breach.").

**WHITE & CASE**

The Honorable George B. Daniels
November 4, 2020

***

Transocean respectfully requests that this Court reject Whitebox's latest invitation to ignore the controlling law.

Respectfully submitted,

*/s/ Glenn M. Kurtz*

Glenn M. Kurtz
Partner

T +1 212 819 8252
E gkurtz@whitecase.com

5